UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ROBERT J. LARKINS and<br>ANNE K. LARKINS, | Case No. 3:17-cv-169 |
| Plaintiffs, | Judge Thomas M. Rose |
| v. | |
| FIFTH THIRD MORTGAGE COMPANY, | |
| Defendant. | |

**ENTRY AND ORDER GRANTING DEFENDANT FIFTH THIRD MORTGAGE COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOC. 16), DENYING PLAINTIFFS ROBERT AND ANNE LARKINS'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 17), AND TERMINATING THE CASE**

This case is before the Court on Defendant Fifth Third Mortgage Company's Motion for Summary Judgment (Doc. 16) and on Plaintiffs Robert and Anne Larkins's Motion for Partial Summary Judgment (Doc. 17). Plaintiffs Robert J. Larkins and Anne K. Larkins (collectively "Plaintiffs" or "the Larkins") allege that Defendant Fifth Third Mortgage Company ("Defendant" or "Fifth Third") violated the Truth In Lending Act ("TILA"),[1] specifically 15 U.S.C. § 1639g and its corresponding regulation at 12 C.F.R. § 1026.36(c)(3). Fifth Third moves for summary judgment on the Larkins' sole claim, while the Larkins move for partial summary judgment on liability. Both motions are fully briefed and ripe for review. (Docs. 16, 19, 21, and 17, 18, 22, respectively.) For the reasons below, the Court **GRANTS** Fifth Third's Motion for Summary Judgment, **DENIES** the Larkins' Motion for Partial Summary Judgment, and **TERMINATES** this case.

---

[1] 15 U.S.C. §§ 1601 *et seq.*

## I. BACKGROUND

In the summer of 2003, the Larkins took out a mortgage with Fifth Third to buy their home in Dayton, Ohio. After the Larkins defaulted on their mortgage loan, Fifth Third filed a foreclosure action against them in state court in November of 2016. In that foreclosure action, as of April 2017, the law firm of Clunk, Paisley, Hoose Co., L.P.A. served as foreclosure counsel for Fifth Third, and the law firm of Doucet & Associates Co., L.P.A. served as foreclosure counsel for the Larkins. As of that same time (April 2017), John P. Miller was an associate with Doucet and Associates Co., LPA (*i.e.*, the Larkins' foreclosure counsel), and Diane Bennett was a legal assistant with Fifth Third's foreclosure counsel.

On April 14, 2017, the Larkins received a written offer to purchase their home. They needed a payoff quote by April 30, 2017 to prevent the offer from expiring. Because of the pending foreclosure action and the fact that Fifth Third had legal representation, the Larkins' foreclosure counsel sent a written request for a payoff balance to Fifth Third's foreclosure counsel. Specifically, on April 19, 2017, Ms. Bennett received an email from Mr. Miller that had been directed to the firm's "notice" and "requests" electronic inboxes. The email's subject line was "Fifth Third Mortgage v. Larkins 2016 CV 05921," and it stated the following:

> "Good morning Attorney Mueller and Attorney Whiteacre,
>
> Anne and Robert Larkins request a payoff quote from Fifth Third in regard to the mortgage loan associated with the pending litigation between the two parties. Could yourselves or your other attorneys associated with this case obtain this pay off quote and send it along? Your assistance is greatly appreciated and we look forward to hearing from you.
>
> Sincerely,
>
> John P. Miller"

In response to Mr. Miller's email, Ms. Bennett stated in an email: "Hello: We can order a payoff quote for you. We will send it upon receipt. Diane Bennett Legal Assistant." Not surprisingly,

Fifth Third's foreclosure counsel did not have access to Fifth Third's internal systems or the information necessary to generate a customer payoff quote itself.

On Monday, April 24, 2017, Fifth Third received a request for a payoff quote from Ms. Bennett, on behalf of the Larkins. (Doc. 16-5, ¶7; Doc. 16-1, ¶13; *see also* Doc. 16-8, p. FTM477.) On Friday, April 28, 2017, Fifth Third generated the payoff quote. (Doc. 16-1, ¶14.) Fifth Third sent the payoff quote (with payoff amount) to Ms. Bennett, which Ms. Bennett received on Monday, May 1, 2017. (Doc. 16-5, ¶8; *see also* Doc. 16-5 PAGEID #257.) Therefore, Fifth Third sent the payoff quote five business days after receiving the request from Ms. Bennett on behalf of the borrower (*i.e.*, the Larkins).

On May 4, 2017, after receiving clarifying information that she had requested from Fifth Third regarding the payoff quote, Ms. Bennett both mailed and emailed the payoff quote to Mr. Jesse Moses of Doucet and Associates Co., L.P.A., the attorney of record for the Larkins in the foreclosure action. The addresses used for both mailing and emailing the payoff quote to Mr. Moses were those provided on his Notification Form of Record in the foreclosure action. Ms. Bennett received an "Email Delivery Failure" email that indicated her email to Mr. Moses could not be delivered and that the email address for Mr. Moses no longer existed.

On May 15, 2017, the Larkins' foreclosure counsel asserted in an email to Fifth Third's foreclosure counsel that Fifth Third had refused to furnish a payoff quote. Fifth Third's foreclosure counsel responded by email the next day, re-sending the payoff quote that Ms. Bennett had sent on May 4, 2017 and noting that the payoff quote had been sent on May 4, 2017.

II. **LEGAL STANDARD ON SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

3

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The

inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

### III.  ANALYSIS

#### A. Plaintiffs' Sole Claim is that the Defendant Violated TILA.

The Larkins claim that Fifth Third violated TILA because Fifth Third allegedly failed to provide them with an accurate payoff balance within seven business days from receiving a written request for such balance from, or on behalf of, the Larkins. (Am. Cmplt. ¶37-38.) 15 U.S.C. § 1640(a) establishes an action for damages against any creditor who fails to comply with a requirement imposed under certain portions of TILA, including 15 U.S.C. § 1639g.

TILA is to be liberally construed in the consumer's favor and was enacted to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *Sibby v. Ownit Mortg. Solutions, Inc.*, 240 F. App'x 713, 714 (6th Cir. 2007).

The statutory provision at issue (15 U.S.C. § 1639g) states, in full: "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more

than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C. § 1639g. "Payoff balance" is defined as "any request from a consumer, or appropriate party acting on behalf of the consumer, which inquires into the total amount outstanding on the loan, or the amount needed to pay off the loan." 78 Fed. Reg. 10902, 10957 (Feb. 14, 2013).

The regulation at issue[2] states, in full:

> "Payoff statements. In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time. A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement."

12 C.F.R. § 1026.36(c)(3) (2016).

### B. Fifth Third Did Not Violate TILA.

15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) limit responsibility to "[a] creditor or servicer of a home loan" or "a creditor, assignee or servicer," respectively. Under TILA, "creditor" is defined as follows:

> "The term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. … "

---
[2] The regulation is part of what is sometimes referred to as Regulation Z.

15 U.S.C. § 1602(g). Fifth Third qualifies as a "creditor" under the statute for purposes of the Larkins' home loan. However, Fifth Third's foreclosure counsel does not, and there is no argument that Fifth Third's foreclosure counsel is a "servicer of a home loan," an "assignee," or a "servicer."[3]

As set forth above, on Monday, April 24, 2017, Fifth Third received a request for a payoff balance from Ms. Bennett, on behalf of the Larkins. (Doc. 16-5, ¶7; Doc. 16-1, ¶13; *see also* Doc. 16-8, p. FTM477.) On Friday, April 28, 2017, Fifth Third generated the payoff balance. (Doc. 16-1, ¶14.) Fifth Third sent a payoff quote -- with the payoff balance -- to Ms. Bennett, which Ms. Bennett received on Monday, May 1, 2017. (Doc. 16-5, ¶8; *see also* Doc. 16-5 PAGEID #257.) Therefore, Fifth Third sent the payoff balance five business days (*i.e.*, <u>not</u> "more than 7 business days") after receiving the request for the payoff balance on behalf of the borrower. There is no argument, nor evidence demonstrating, that the payoff balance that Fifth Third provided to Ms. Bennett on May 1, 2017 was not an accurate payoff balance at the time that Fifth Third sent it.[4] Thus, Fifth Third complied with the requirements of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

In an attempt to save its claim, the Larkins argue that agency principles should apply here to somehow qualify Fifth Third's foreclosure counsel as a "creditor." The argument is contrary to TILA's plain language. The definition (set forth above) does not include "agents" of the creditor, and neither "agent" nor "agents" appears in 15 U.S.C. § 1639g or 12 C.F.R. § 1026.36(c)(3). *See also Langenfeld v. Chase Bank United States, N.A.*, 537 F. Supp. 2d 1181, 1205 (N.D. Okla. 2008) ("Hanna, a law firm, does not itself meet the definition of 'creditor' in TILA"). In contrast, other

---

[3] "Servicer" is defined at 15 U.S.C. § 1602(dd)(7) ("the person responsible for servicing of a loan (including the person who makes or hold a loan if such person also services the loan"). *Accord*: 12 C.F.R. § 1024.2(b) (defining "servicer"). There is no evidence that Fifth Third's foreclosure counsel is a "servicer." Fifth Third admitted that Fifth Third itself was the servicer of the Larkins' mortgage.

[4] There is also no argument, nor evidence demonstrating, that the payoff balance was not an accurate payoff balance at the time that Ms. Bennett sent it on May 4, 2017.

7

provisions of TILA do include agents. *E.g.,* 15 U.S.C. § 1602(o) (defining the term "card issuer" as "any person who issues a credit card, or the agent of such person with respect to such card.").

The Larkins rely on *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 692 F.3d 507 (6th Cir. 2012) to support their argument. However, that case is readily distinguishable, and it only would support an argument that Fifth Third's foreclosure counsel could be an <u>agent</u> of a creditor for certain purposes. However, again, the statute and regulation at issue do not include agents. In *Chicago Title*, the court found that a title company was acting as an agent for another title company for purposes of issuing title-insurance policies where those companies had actually entered into an "issuing-agent" agreement. 692 F.3d at 511 (defendant title company "enter[ed] an issuing-agent agreement with [other title company] that authorized [other title company] to issue title-insurance policies on [defendant title company's] behalf.").

Here, there is no evidence of an agreement between Fifth Third and its foreclosure counsel for its foreclosure counsel to respond to consumers' payoff balance requests. Tellingly, Fifth Third's foreclosure counsel does not have access to Fifth Third's internal systems or the information necessary to generate a customer payoff quote itself. While Fifth Third's agreement to allow its foreclosure counsel to represent Fifth Third in foreclosure proceedings may qualify its counsel to be Fifth Third's agent for certain purposes, that agreement is not an agreement for its foreclosure counsel to accept and respond to payoff requests subject to TILA on Fifth Third's behalf. *See Langenfeld*, 537 F.Supp. 2d at 1205 (despite the definition of "card issuer" under 15 U.S.C. § 1602(o) including both a person who issues a credit card <u>and</u> the agent of such person, defendant law firm was not an agent for purposes of statute at issue where there was no agreement that the cardholder could use a line of credit with the alleged agent (law firm) to pay obligations incurred by using the credit card) (*citing* 12 C.F.R., pt. 226, supp. I, official staff commentary,

8

P2(a)(7)); *Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1120-1121 (7th Cir. 2003) (defendants could not be deemed "agents" for purposes of statutory section within TILA where there was no agreement regarding the requirement at issue); *Kantz v. Bank of Am., N.A.,* No. 3:17-cv-00051, 2018 U.S. Dist. LEXIS 29689, at *10 (M.D. Tenn. Apr. 25, 2018) (finding that 15 U.S.C. § 1639g and 15 U.S.C. § 1640 did not contemplate recovery of damages by a party whose lawyer sent an unanswered request for information to another party's lawyer during ongoing litigation).[5]

Adopting the Larkins' argument would expand the potential for liability under TILA farther than what Congress set forth in TILA and farther than what the Consumer Financial Protection Bureau ("CFPB") set forth in its regulations. This Court declines to do so and applies 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) as written. *C.f. Neff*, 352 F.3d at 1121 ("Neither Congress nor the [CFPB] made the policy choice here to extend the duty [under TILA section 15 U.S.C. § 1637(b)]…, and it is not our role to read such a requirement into the statute.").

Therefore, under the plain language of the statute and the regulation, Fifth Third did not violate 15 U.S.C. § 1639g or 12 C.F.R. § 1026.36(c)(3). Fifth Third is entitled to summary judgment on the Larkins' claim.

### C. Other Language in 12 C.F.R. § 1026.36(c)(3) Provides Additional Support That Fifth Third Did Not Violate TILA.

Although unnecessary given the above determination, 12 C.F.R. § 1026.36(c)(3) contains an additional basis for the Court's decision. As set forth above, 12 C.F.R § 1026.36(c)(3) provides that "[w]hen a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure…the

---

[5] The plaintiff's claim in *Kantz* was the same as the Larkins' claim here: that the defendant violated TILA, specifically 15 U.S.C. § 1639g, by failing to provide the plaintiff with information regarding the payoff amount of his loan. *Kantz*, 2018 U.S. Dist. LEXIS 69689, at *3.

9

payoff statement must be provided within a reasonable time." The Larkins cite to this regulation in their Amended Complaint (Am. Cmplt. ¶38), and it applies here as another reason why their claim fails.

The CFPB is the agency responsible for administering TILA. *See* 15 U.S.C. § 1602(b); 15 U.S.C. § 1604; *Segrist v. Bank of N.Y. Mellon*, 744 F. App'x 932, 937 n.2 (6th Cir. 2018). Congress expressly stated in TILA:

> "(a) Promulgation, contents, etc., of regulations. The Bureau [CFPB] shall prescribe regulations to carry out the purposes of this title [15 USCS §§ 1601 et seq.]. Except with respect to the provisions of section 129 [15 USCS § 1639] that apply to a mortgage referred to in section 103(aa) [15 USCS § 1602(aa)], such regulations may contain such additional requirements, classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for all or any class of transactions, as in the judgment of the Bureau are necessary or proper to effectuate the purposes of this title [15 USCS §§ 1601 et seq.], to prevent circumvention or evasion thereof, or to facilitate compliance therewith."

15 U.S.C. § 1604(a). The Sixth Circuit, quoting the Supreme Court, explained that, "[a]bsent some obvious repugnance to the statute, the [CFPB's] regulation implementing [TILA] should be accepted by the courts, as should the [CFPB's] interpretation of its own regulation." *Segrist*, 744 F. App'x at 937 (quoting *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981)).[6]

Here, because their loan was in foreclosure, the Larkins made their payoff balance request through their foreclosure counsel, which in turn asked Fifth Third's foreclosure counsel to make the request on the Larkins' behalf. In fact, with respect to the payoff balance request, the Larkins and Fifth Third only communicated through their foreclosure counsel. The undisputed facts show

---

[6] *Accord*: *Sibby*, 240 F. App'x at 714-715 (TILA "delegates the authority to promulgate regulations to the [CFPB]. 15 U.S.C. § 1604(a). Those regulations, like TILA itself, are entitled to deference."); *Kantz,* 2018 U.S. Dist. LEXIS 69689, at *11-13 (relying on CFPB's Official Interpretation to find that defendant's duty to respond under 15 U.S.C. § 1639g was not triggered, where the CFPB's commentary struck "a reasonable balance between the desire for a prompt response to a consumer's request for payoff information and the need to avoid the unauthorized disclosure of a consumer's personal financial information"); *Neff*, 352 F.3d at 1120 n.4 ("Congress delegated to [the CFPB] the task of carrying out TILA, see 15 U.S.C. § 1604(a). The [CFPB's] interpretation of both TILA and Regulation Z, including the official commentary, is entitled to great deference.").

that it was that process (*i.e.*, making the request through foreclosure counsel during litigation) that caused delay beyond the April 24 to May 1 period that it took Fifth Third to receive the request and provide the payoff balance. Therefore, pursuant to 12 C.F.R. § 1026.36(c)(3), even if Fifth Third's foreclosure counsel was deemed to be a "creditor," "assignee," or "servicer" under TILA, the payoff statement only needed to be provided "within a reasonable time," not "within seven business days of such a request."

As shown above, Fifth Third's foreclosure counsel sent the payoff balance to the mailing and email addresses for the Larkins' attorney of record in the foreclosure action on May 4, 2017. Thus, Fifth Third's foreclosure counsel sent the payoff balance eleven business days from April 19, 2017 -- the date on which the Larkins' foreclosure counsel sent the request to Fifth Third's foreclosure counsel.[7] Although Fifth Third is a "creditor," Fifth Third cannot necessarily control third parties. For example, in this case, it could not control: (a) where the Larkins' foreclosure counsel sent the payoff balance request; (b) how often its own foreclosure counsel checked its email accounts; and (c) whether the Larkins' attorney of record in the foreclosure action provided a correct mailing or email address.

Under the circumstances, and given the fact that the request and response needed to make additional steps by traveling through intermediaries because of the foreclosure litigation, eleven

---

[7] There is no genuine issue of material fact regarding whether Ms. Bennett sent the payoff balance on May 4, 2017 (both to the mailing address and the email address on record in the foreclosure action for Mr. Moses, the Larkins' attorney of record in the foreclosure action). Instead, the Larkins raise an issue regarding whether they or their foreclosure counsel actually <u>received</u> either the letter or the email sent on May 4. However, that is not an issue of <u>material</u> fact because the plain language of the statute and regulation show that they deal with the action of <u>sending</u>, not <u>receiving</u>, the payoff balance. 15 U.S.C. § 1639g (creditor "shall send" an accurate payoff balance within a reasonable time); 12 C.F.R. § 1026.36(c)(3) (payoff balance "shall be sent within a reasonable time"; where payoff balance cannot be "provide[d]" within seven business days because the loan is in foreclosure, the payoff balance must be "provided" within a reasonable time). *See also* 78 Fed. Reg. 10902, 10958 (Feb. 14, 2013) (CFPB explaining that "provide" has the same meaning as "send" for purposes of the regulation). The Court declines the Larkins' apparent invitation to read into the statute and regulation a requirement that a consumer "receive" a payoff balance within the designated time period.

11

business days was certainly a "reasonable time" to provide the payoff statement.[8] The Larkins do not show otherwise, and no reasonable juror could find by a preponderance of the evidence that the Larkins are entitled to a verdict on their claim given the applicable law and evidence presented.

For this additional, independent reason, Fifth Third is entitled to summary judgment on the Larkins' claim.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Fifth Third's Motion for Summary Judgment (Doc. 16) and **DENIES** the Larkins' Motion for Partial Summary Judgment (Doc. 17). This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, April 22, 2019.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[8] The court in *Langdon v. Wells Fargo, N.A.*, No. 1:14-cv168-LJO-GSA, 2014 U.S. Dist. LEXIS 56026 (E.D.Cal. Apr. 22, 2014) came to a similar conclusion. The plaintiff in *Langdon* made a claim under the same regulation (12 C.F.R. § 1026.36). *Id*. at *1. The court in *Langdon* found that, because the plaintiffs had requested a payoff statement when their loan was in foreclosure, the defendant bank was not required to provide plaintiffs with a payoff statement within seven days of their written request, but instead only had to do so "within a reasonable time." *Id*. at *8-9. The plaintiff had requested a payoff statement in June of 2013, and the defendant bank provided the payoff statement in January 2014 – over half a year later. *Id*. This period of time was not found to be unreasonable, and the court dismissed plaintiff's claim. *Id*.